IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHANE COREY GRIFFIN,

      Petitioner,

v.                                 CASE NO. 1:16-cv-32-MW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Petitioner is

proceeding pursuant to an amended petition, ECF No. 11 (hereafter

"Petition").  The Petition stems from Petitioner's Alachua County

convictions of controlled-substance offenses, driving without a valid license,

witness tampering, and solicitation to commit perjury, for which Petitioner is

serving a total 17-year sentence.[1]  The Respondent has filed a response in

opposition to the petition, together with relevant portions of the state-court

record, and Petitioner has filed a reply.  ECF Nos. 20, 22  Upon due

---

[1] Petitioner was originally charged and convicted for felony driving while his license was revoked, but that conviction was amended to a conviction for driving without a valid license.  *See* ECF No. 223-25.

consideration of the Petition, the response, the state-court record, and Petitioner's reply, the undersigned recommends that the Petition be denied.[1]

## I. **State-Court Proceedings**

Petitioner was charged in a Fourth Amended Information with trafficking in illegal drugs (hydrocodone) (Count One); possession of 20 or more grams of cannabis (Count Two); possession of drug paraphernalia (Count Three); felony driving while license revoked (Count Four); tampering with a witness, victim, or informant (Count Five); and solicitation to commit perjury in official proceeding (Count Six). ECF No. 20-1 at 62-64. Prior to jury selection, Petitioner's counsel, Eric Atria, informed the court that the defense had no objections to the amended information which did not "change our strategy or preparation." ECF No. 20-2 at 78.

The State's case was based upon an operation by the Gainesville-Alachua County Drug Task Force during which a confidential informant wearing a recording device bought marijuana from Petitioner. As a consequence of that sale, Task Force members obtained a search warrant

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

for Petitioner's residence.  Prior to executing the warrant, officers conducted a protective sweep of the residence.  When Petitioner was arrested, he had in his possession U.S. currency that matched currency issued to the confidential informant.  ECF No. 20-2 at 91-95.

The search of Petitioner's residence revealed a scale and a container with marijuana residue, two large bags of cannabis totaling 155 grams, and a "Q-Tip" container containing various pills, including six grams of hydrocodone.  *Id.* at 95-97.  Petitioner waived his *Miranda* rights and made statements indicating that he was aware that the marijuana and pills were in his residence.  *Id.*

While Petitioner was in jail pending trial, letters were obtained from another jail inmate, Nathaniel Grimes.  A handwriting expert identified the letters as having been written by Petitioner.  The letters were directed to Petitioner's girlfriend, Anna Bellflower, and instructed Bellflower to falsely tell prosecutors that Petitioner did not possess the drugs found in his residence.  The letters also stated that Petitioner was going to sue the police department for false arrest so that Petitioner and Bellflower would have money.  *Id.* at 96-100.

The State's witnesses at trial included Grimes, the officer who intercepted the letters, the handwriting expert, Bellflower, the Task Force

case agent and other law enforcement officers, and Petitioner.  Bellflower testified, *inter alia,* that while she lived with Petitioner he sold marijuana and pills from the residence.  ECF No. 20-2 at 126.  Petitioner testified that he never sold pills and that he was unaware of any pills being in the house, except for medication that Bellflower received from the Health Department. *Id.* at 158-66.  He admitted that he sold marijuana to the CI on the date of his arrest and that he was driving without a license.  He claimed that the jail letters to Bellflower were just a "joke" and not intended to influence her testimony.  *Id.* at 178-87.

In discussing the jury instructions, Mr. Atria asked the court to delete an instruction on the affirmative defense of lack of knowledge of the illicit nature of the hydrocodone, because Petitioner's defense was based on being unaware of the presence of the pills and not lack of knowledge of their illicit nature.  *Id.* at 206-09.

The jury found Petitioner guilty on all counts.  ECF No. 20-4 at 45-46. Petitioner appealed, asserting as the sole ground that the statute under which he was convicted did not require sufficient *mens rea* to sustain a conviction.  *Id.* at 136.  The First DCA affirmed, *per curiam*, without written opinion.  *Id.* at 154.

Petitioner filed a *pro se* postconviction motion pursuant to Fla. R.

Crim. P. 3.850. *Id.* at 285-99; ECF No. 20-5 at 1-67. The state court

summarily denied all grounds by written opinion, without an evidentiary

hearing. *Id.* at 271-82. The First DCA affirmed, *per curiam*, without written

opinion. ECF No. 20-6 at 37.

Petitioner then filed a petition for a writ of habeas corpus in the First

DCA alleging ineffective assistance of appellate counsel. *Id.* at 83-104.

The First DCA denied the petition on the merits without written opinion. *Id.*

at 125. The Florida Supreme Court denied Petitioner's motion to invoke

discretionary jurisdiction. *Id.* at 141.

The instant federal petition, which Respondent concedes is timely,

followed. Petitioner asserts twelve claims for relief: (1) & (6) The state

court did not give a jury instruction on his affirmative defense, and counsel

was ineffective for failing to object; (2) Newly-discovered evidence

regarding the actions of a state witness; (3) & (4) Counsel failed to

interview, depose, and present exculpatory witnesses; (5) "Discovery

violation due to fraud on the court" (construed as a sufficiency-of-the-

evidence claim); (7) Counsel failed to object to prosecutorial misconduct;

(8) Counsel failed to object or move for a continuance after the information

was amended; (9) Petitioner's convictions for tampering with a witness and

solicitation to commit perjury violated Double Jeopardy; (10) Cumulative

errors of counsel; and (11) Counsel failed to file a motion to suppress.

## II. <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review

process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly

exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful

opportunity to "pass upon and correct alleged violations of its prisoners'

federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation

omitted).

When a petitioner fails to properly exhaust a federal claim in state

court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.

*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas

courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III. Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the

criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id.* at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is---'that is because it was meant to be.'" *Id.* at 16 (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id.* (quoting *Harrington*, 131 S.Ct. at 786).

---

prejudice prong).

# IV. **Discussion**

## A. *Claims (1) and (6): Jury Instruction on Affirmative Defense*

Petitioner contends that his trial and appellate counsel were ineffective with respect to the state court's failure to give a jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the hydrocodone pills.  ECF No. 11 at 5, 13.  Petitioner contends that counsel should have argued that *State v. Adkins,* 96 So.3d 412 (Fla. 2012), should not be applied to his case because he "never had the opportunity to have his affirmative defense applied to his jury instructions as Adkins did."  *Id.*

As background, following Florida Supreme Court cases holding that the State was required to prove *mens rea* in controlled-substance cases, and that the requisite *mens rea* includes both knowledge of the presence of the controlled substance as well as knowledge of its illicit nature, the Florida legislature enacted Fla. Stat. § 893.101, amending the Drug Abuse Prevention and Control Act.  The amendment expressly provided that knowledge of the illicit nature of the controlled substance was not an element of the offense and created an affirmative defense of lack of knowledge of the illicit nature of the substance.  The statute did not eliminate the element of knowledge of the presence of the substance.  "In short, the amendment did not completely eliminate *mens rea* for Florida

drug crimes: it converted one aspect of *mens rea* from an element of the crime into an affirmative defense." *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1350-51 (11th Cir. 2012).

As the Eleventh Circuit explained, the Florida Supreme Court upheld the constitutionality of the amendment in *State v. Adkins*, 96 So.3d 412, 423 (Fla. 2012).  In *Shelton*, the Eleventh Circuit reviewed habeas claims in which the Petitioner challenged the constitutionality of Florida's strict liability drug statutes.  The Court held that *Adkins* was not an unreasonable application of federal law.  Specifically, the Eleventh Circuit held that the Florida Supreme Court's adjudication of the facial constitutionality of § 893.101 in *Adkins* was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  *Shelton*, 691 F.3d at 1355.

In this case, Petitioner's claims lack a factual basis in the record.  The trial record establishes that Petitioner *did* have an opportunity to assert the affirmative defense that he now claims.  Trial counsel did not do so because the defense strategy was to argue that Petitioner was unaware that hydrocodone was present in his residence, *not* that he was unaware of the illicit nature of the drug.  *See* ECF No. 20-3 at 206-09.  As the state court observed in rejecting this claim on postconviction review, Petitioner

"testified on direct during the trial that he did not know the pills were there; not that he knew they were there but did not know their illicit nature. . . . An affirmative defense instruction on lack of knowledge of the illicit nature of the pills would have directly conflicted with his own testimony." ECF No. 20-4 at 278. The trial court thus concluded that Petitioner had failed to show either error by trial counsel or prejudice in not asking for an instruction on the affirmative defense. *Id.*

Because trial counsel was not ineffective for not asking for the affirmative defense instruction, it follows that appellate counsel was not ineffective for failing to argue on appeal that the trial court erred in not giving the instruction. The trial record simply does not support such a claim on appeal. Petitioner's appellate counsel did argue on appeal that the statute was unconstitutional, in order to preserve the constitutional issue for further review. ECF No. 20-4 at 136.

Thus, on this record, Petitioner has failed to show that the state courts' rejection of these ineffective-assistance claims was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

**B.  Claim (2): "Newly-Discovered Evidence"**

Petitioner claims that after his conviction he discovered that a witness against him, Jeanne Rydell, engaged in "actions" that call into question his conviction.  ECF No. 11 at 6-7.  In his Rule 3.850 proceeding, Petitioner submitted a letter from Adam Motley, in which Motley stated that the hydrocodone pills in Petitioner's residence actually belonged to Rydell. ECF No. 20-5 at 30.

In rejecting this claim on postconviction review, the state court first noted that the evidence was not "newly discovered" because Petitioner conceded in his motion that he knew of Ms. Rydell and the statements that she made to law enforcement prior to trial.  ECF No. 20-4 at 274-75. Moreover, at trial Petitioner testified that Rydell was his neighbor and a friend of Bellflower's, and that Rydell brought pills into his residence.  ECF No. 20-3 at 164-65.  On this record, Petitioner has failed to show that the state court unreasonably found that the information about Rydell contained in the Motley letter did not amount to "newly-discovered evidence."

To the extent Petitioner argues that the Motley letter amounts to evidence of actual innocence, his claim falls short.  In the federal habeas context, to state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that

"it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298,

324 (1995).  As noted, the information about Rydell was not "new".

Further, Petitioner's claim that the pills were not his, and his suggestion

that they in fact belonged to Rydell, was presented at trial.  Petitioner's

claim was contradicted by other evidence, including Bellflower's testimony

that Petitioner sold pills and Petitioner's own statements to law

enforcement that he had a suitcase containing pills in his home.  *See* ECF

No. 20-2 at 126 (Bellflower's testimony); 20-3 at 1 (testimony of FDLE

Special Agent Jeffrey Vash).  In view of the evidence of Petitioner's guilt,

the Court cannot conclude that had the Motley letter been available at trial

it is "more likely than not" that he would have been acquitted.

In sum, Petitioner has failed to show that the state court's rejection of

this claim of "newly discovered evidence" was contrary to, or an

unreasonable application of, federal law, or resulted in an unreasonable

determination of the facts in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d).

## C. *Claims (3) & (4): Ineffective Assistance Regarding Witnesses*

Petitioner contends that his trial counsel failed to depose and call

exculpatory witnesses.  Specifically, in Claim (3) Petitioner contends that

Alisha Bass would have testified to facts "which were relevant and crucial to [Petitioner's] defense."  In Claim (4), Petitioner conclusionally alleges that counsel's failure to depose unidentified witnesses caused evidence to be excluded that would have "exonerated" Petitioner, and that counsel did not look at an audio/video recording of events before his arrest.  ECF No. 11 at 8-10.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

In this case, Petitioner's claims regarding the substance of asserted "exculpatory" testimony are wholly speculative and insufficient to establish a claim for federal habeas relief.  In rejecting this claim on postconviction review, the state court found that Petitioner failed to state a facially sufficient ineffective-assistance claim relating to uncalled witnesses.  ECF No. 20-4 at 275-77.  The state court went on to reject this claim on both the performance and prejudice prongs of *Strickland.*

The state court observed that Petitioner had submitted a letter from his defense counsel in which Atria stated that the decision not to call Bass

at trial "goes directly towards trial strategy."  *See* ECF No. 20-5 at 83-84.

That the decision not to call Bass was a strategic one is supported by

Petitioner's own statement in his postconviction motion that Atria decided

not to call Bass as a witness because she would commit perjury.  ECF No.

20-5 at 3.  The state court observed that Petitioner was actively involved

with his defense and the defense strategy employed by counsel. ECF No.

20-4 at 276.

In his postconviction motion, Petitioner submitted a statement

purportedly made by Bass in which she claims that Bellflower and Rydell

used pain pills and hid them in Petitioner's residence.  *Id.* at 72-73.  Bass

does not state, however, that she would have testified that Petitioner did

not sell hydrocodone.  Therefore, as the state court found, her proposed

testimony does not contradict the state's theory that Petitioner sold

hydrocodone pills.  *See id.*; ECF No. 20-5 at 276.  Considering the ample

evidence from which a reasonable jury could have found Petitioner guilty of

trafficking in hydrocodone, Petitioner has failed to show that he was

prejudiced by counsel's decision not to use Bass as a defense witness.

Accordingly, he has not shown that the state court's rejection of this

ineffective-assistance claim was contrary to, or an unreasonable

application of, federal law, or an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

## D.  *Claim (5): "Discovery Violation Due to Fraud on the Court"*

Petitioner asserts that it was "error" for the state court to sentence him to prison "based on alleged facts that were not proven to the jury," and that Petitioner has shown that the case against him was based on "fraud on the court perpetrated by the prosecutor[.]" ECF No. 11 at 12.

This claim in substance challenges the sufficiency of the evidence against Petitioner. Petitioner did not, however, appeal his conviction based on sufficiency of the evidence.  Therefore, this claim is unexhausted and foreclosed from federal habeas corpus review.  The state court also rejected this claim because the sufficiency of the evidence was not raised on direct appeal.  ECF No. 20-5 at 277-78.

Even if Petitioner had exhausted this claim, on this record the claim must be denied on the merits.[1]  When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of

---

[1] Pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits notwithstanding Petitioner's failure to exhaust.

the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307,

319 (1979).  As the Eleventh Circuit has explained:

> Faced with a record of historical facts that supports conflicting
> inferences, we must presume that the jury resolved such conflicts in
> favor of the prosecution, and we defer to the jury's judgment as to the
> weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d
> 1140, 1143 (11th Cir.1987). The simple fact that the evidence gives
> some support to the defendant's theory of innocence does not war
> rant the grant of habeas relief. *Id*.

*Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004); *see Young v. Kemp*,

760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no

power to grant habeas corpus relief because it finds that the state

conviction is against the 'weight' of the evidence[.]").  "In determining

whether the facts of a particular case satisfy the *Jackson* standard, it is

necessary to refer to the essential elements of the crimes as defined by

state law."  *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations

omitted).

The trial court, without objection, instructed the jury on the essential

elements of the crime of trafficking in illegal drugs: (1) the Defendant

knowingly possessed a certain substance; (2) the substance was

hydrocodone; (3) the quantity of the substance was four grams or more;

and (4) the Defendant knew that the substance was hydrocodone.  ECF

No. 20-4 at 14.  As summarized in the record, the evidence of Petitioner's

guilt on this charge included the testimony of officers who found the

hydrocodone in Petitioner's residence; Petitioner's post-Miranda admission

that there were pain pills in his residence; inculpatory statements made by

Petitioner in his letters to Bellflower; and Bellflower's testimony that

Petitioner sold hydrocodone.  *See* ECF No. 20-3 at 246-47.  On this

evidence, any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt.

To the extent that Petitioner argues the evidence was insufficient

because it was circumstantial, such a claim provides no basis for federal

habeas corpus relief.  The Supreme Court has held that under federal

constitutional law circumstantial and direct evidence is treated the same,

and "'[c]ircumstantial evidence is not only sufficient, but may also be more

certain, satisfying, and persuasive than direct evidence.'" *Desert Palace*

*Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific*

*R.R. Co.*, 352 U.S. 500, 508 n. 17 (1957)).  In the context of a criminal

conviction, the Court has stated "we have never questioned the sufficiency

of circumstantial evidence in support of a criminal conviction, even though

proof beyond a reasonable doubt is required." *Desert Palace*, 539 U.S. at

100 (citing *Holland v. United States*, 348 U.S. 121, 140 (1954)

(circumstantial evidence is "intrinsically no different from testimonial
evidence")).

Accordingly, Petitioner has failed to show that the state court's denial
of relief on this claim was contrary to, or an unreasonable application of,
federal law, or an unreasonable determination of the facts in light of the
evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

## E.  *Claim (7): Ineffective Assistance Concerning Prosecutor*

Petitioner contends that his counsel failed to object to "improper
remarks" and "irrelevant evidence" offered by the prosecutor in closing
argument.  ECF No. 11 at 14. Although Petitioner does not describe the
challenged statements in the Amended Petition, his original petition (which
was stricken for excess pages), clarifies the basis of this claim.  In
summary, Petitioner contends that the prosecutor mischaracterized his
testimony and other evidence in closing arguments.  Specifically, Petitioner
claims that the prosecutor improperly suggested that he told Bellflower to
lie for him, told the jury to disregard his testimony, improperly questioned
Petitioner's credibility, and argued facts that were not in evidence.  ECF
No. 1 at 32-35.

It is well-settled that improper jury argument by the prosecution
violates a defendant's constitutional right to a fair trial in some

circumstances.  *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir.

1978).  "[T]he appropriate standard of review for such a claim on writ of

habeas corpus is 'the narrow one of due process, and not the broad

exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th

Cir. 1987).  The Court applies a two-step process in reviewing such a

claim: (1) the Court considers whether the argument was improper; and (2)

whether any improper argument was so prejudicial as to render the trial

fundamentally unfair.  *Id*. at 1526.  Thus, "'[t]he relevant question is whether

the prosecutors' comments 'so infected the trial with unfairness as to make

the resulting conviction a denial of due process.'"  *Id*. at 1526-27 (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  A trial is fundamentally

unfair if there is a reasonable probability that but for the prosecutor's

improper remarks, the outcome of the trial would have been different.

*Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

     Here, the state court rejected Petitioner's claim after reviewing the

closing argument and concluding that the prosecutor was merely submitting

to the jury conclusions that were reasonably drawn from the evidence.  The

state court explained that the prosecutor "is 'allowed to argue reasonable

inferences from the evidence and to argue credibility of witnesses or any

other relevant issue so long as the argument is based on the evidence.'"

ECF No. 20-5 at 278-79 (quoting *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006)).  The state court therefore found that Petitioner had demonstrated neither deficient performance by counsel nor prejudice with respect to counsel's response to closing argument.  *Id.*

The state court's findings, based on its review of the trial record, are afforded a presumption of correctness.  Petitioner points to no clear and convincing evidence in the record that rebuts the presumption.  The Court has reviewed the prosecutor's closing argument in this case and cannot conclude that counsel erred in failing to object as Petitioner claims, nor that Petitioner was prejudiced by counsel's performance.  The prosecutor's statements plainly fall within the wide latitude afforded to such closing argument and did not render Petitioner's trial fundamentally unfair.  *See* ECF No. 20-3 at 239-61; 20-4 at 1-8.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## F.  *Claim (8): Ineffective Assistance Regarding Amended Information*

Petitioner contends that his counsel was ineffective for failing to ask for a continuance or to object when the information was amended prior to trial.  Specifically, Petitioner contends:

> On 6/6/11, Mr. Griffin was charged with two additional offenses which
> was added to amended information. On 10/14/10, Mr. Griffin was
> charged with Trafficking in Illegal Drugs. On 4/12/11, the charge of
> Trafficking in Illegal Drugs was amended from a charge requiring a
> 15-year minimum mandatory sentence to a charge carrying only a 3-
> year minimum mandatory sentence. On 9/13/11 [prior to trial], the
> language of the two additional charges from 6/6/11 was changed
> according to the Fla. Statute sub parts of the sections of the 3rd
> amended information. The charges gave Mr. Griffin no time to
> prepare an adequate defense against the Prosecutor's newly revised
> amended information to Mr. Griffin's charges.

ECF No. 11 at 15.

Petitioner does not explain precisely how the amendment to the

information adversely impacted his defense.  Further, his claim lacks

factual support in the record.  As the trial court found, there is no

substantive difference between Counts X and XI set forth in the First

Amended Information in June 2011 and Counts V and VI in the Fourth

Amended Information filed on September 13, 2011, prior to

commencement of trial.  ECF No. 20-4 at 279, 20-5 at 189-91 (First

Amended Information), 192-93 (Fourth Amended Information).  The First

Amended Information charged Petitioner with tampering with a witness

(Count X) and solicitation to commit perjury in an official proceeding (Count

XI).  Both charges concerned Petitioner's efforts to influence Bellflower, on

or about April 23, 2011.  *Id.*  The Fourth Amended Information charged

Petitioner with tampering with a witness (Count V) and solicitation to

commit perjury in an official proceeding (Count VI), again concerning

Petitioner's attempts to influence Bellflower on or about April 23, 2011.  The

prosecutor explained that these counts were amended to correct some

statutory language that had been omitted, and to conform the counts to the

evidence in the case.  ECF No. 20-2 at 76-77.  The following colloquy then

took place between the court and defense counsel:

> **THE COURT**: Okay.
> And, Mr. Atria, as it relates to the fourth amended information, are you ready to proceed to the arraignment regarding that fourth amended information?
> **MR. ATRIA**: Judge, yes. We would waive the formal arraignment. As with the other amended information, we would maintain and enter a plea of not guilty.
> There is nothing in this amended information that's a surprise to us, just some corrections. We've been aware of these allegations all along. I don't believe this is a last-minute change in any way, nor is it something that would change our strategy or our preparation or require me to ask for a continuance, so I am still ready.

ECF No. 20-2 at 78.

Upon reviewing this record, the state court concluded that counsel

was neither deficient in connection with the amendment to the information

nor was petitioner prejudiced.  ECF No. 20-4 at 279-80.  Petitioner points to

nothing in the record that contradicts the state court's conclusions.

Petitioner has failed to show that the state court's rejection of this

ineffective-assistance claim was "so lacking in justification that there was

an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134

U.S. at 15.

## G.  *Claim (9): Double Jeopardy*

Petitioner argues that his convictions on Count V (tampering with a

witness) and Count VI (solicitation to commit perjury) violate the Double

Jeopardy clause.  ECF No. 11 at 16.  Petitioner failed to raise this claim on

direct appeal, and therefore it is unexhausted and foreclosed from federal

review.  Further, the claim fails on the merits.

In rejecting this claim on postconviction review, the state court held

as follows:

> Defendant alleges that his dual convictions for Tampering with a
> Witness, Victim, or Informant (count V) and Solicitation to Commit
> Perjury in an Official Proceeding (count VI) violate the prohibition
> against double jeopardy. "[T]he common law 'single transaction rule,'
> which had previously limited convictions arising out of a criminal
> transaction or episode to the most serious offense, has been
> legislatively overruled." *Hayes v. State*, 803 So.2d 695, 699 (Fla.
> 2001). "Therefore, if the Legislature intended separate convictions
> and sentences for a defendant's single criminal act, there is no
> double jeopardy violation for the multiple punishments." *Id*.
> Furthermore, "the prohibition against double jeopardy does not
> prohibit multiple convictions and punishments where a defendant
> commits two or more distinct criminal acts." *Id*. at 700. Here,
> Defendant committed two separate and distinct acts. The record
> reflects that the Tampering charge pertained to the investigation of
> this case; and, the Solicitation to Commit Perjury charge pertained to
> trial testimony. See Trial Transcript at 431 (lines 3-25)-434 (lines 1-
> 22), 463 (lines 19-25)-467 (lines 1-25). Thus, the dual convictions and
> sentences on counts V and VI are not illegal. Accordingly, the claim
> raised is without merit.

ECF No. 20-4 at 280-81.

Petitioner does not explain how the state court's rejection of this claim affords him any basis for federal habeas relief.  The state court's analysis comports with the familiar federal "same-elements" or "Blockburger" test. *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."  *Dixon*, 509 U.S. at 696.  Although this Court will decide under federal law whether a double jeopardy violation has occurred, it must accept Florida courts' interpretation of that state's own statutes. *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir.1988) (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

In this case, the state courts' interpretation of its statutes and conclusion that the offenses of conviction involved separate acts because they were aimed at different proceedings comports with the federal constitutional standard.  Petitioner has failed to show that the state court's rejection of his double-jeopardy claim is contrary to, or an unreasonable application of, federal law.

## H. *Claim (10): Cumulative Errors by Counsel*

Petitioner alleges that all of counsel's errors, as identified in the Petition, cumulatively deprived Petitioner of due process.  ECF No. 11 at 17.

In rejecting a similar "cumulative error" argument made by a § 2254 petitioner, the Eleventh Circuit has stated, "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x. 560, 564 (11th Cir. 2009) (per curiam). The Court further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); see also *Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As previously discussed, Petitioner has not demonstrated that any of his trial counsel's alleged errors, considered alone, rose to the level of

ineffective assistance.  Therefore, there are no errors to accumulate.

Petitioner was not denied effective assistance of counsel, and he has not

demonstrated his trial was fundamentally unfair.  *See Walls v. McNeil*, No.

3:06-cv-237-MCR, 2009 WL 3187066, at *30–*31 (N.D. Fla. Sept. 30,

2009) ("As previously discussed, none of the alleged errors of trial counsel,

considered alone, satisfy the threshold standard of ineffective assistance of

counsel. Therefore, there are no errors to accumulate. Petitioner was not

denied effective assistance of counsel, and he has not demonstrated that

his trial was fundamentally unfair.").   This claim presents no basis for

federal habeas relief.

**I.  *Claim (11):  Failure to File Motion to Suppress***

Petitioner contends that his trial counsel rendered ineffective

assistance by failing to file a motion to suppress evidence obtained from a

"warrantless" entry and "protective sweep" of his home.  ECF No. 11 at 18.

Petitioner contends that the police illegally entered his home before

obtaining the warrant, and that he requested that counsel file a motion to

suppress but he did not do so.  *Id.*

The state court rejected this claim on postconviction review,

reasoning as follows:

> As to Ground Ten, Defendant alleges that trial counsel was
> ineffective for failing to move to suppress the warrantless search of

> Defendant's home by law enforcement. The search in this case was done with a warrant, which Defendant readily admits in his motion. What Defendant is actually referring to is the "quick safety sweep" that was done of his home prior to the search warrant being served and executed. It is undisputed that a protective sweep was done of the home prior to the warrant being executed by the officers. *See, e.g.*, Trial Transcript at 212 (lines 2-11), 277 (lines 20-25) - 278 (lines 1-23). The protective sweep was done after the warrant was obtained; and no search was conducted and no evidence was seized during the protective sweep. *Id.* at 134 (lines 9-25) -137 (lines 1-2). There is no constitutional violation when the police enter and secure the premises designated in a search warrant, where the warrant has issued but is not physically available at the premises for execution. *Conner v. State*, 701 So. 2d 441, 442 (Fla. 4th DCA 1997) (*citing State v. Riley*, 462 So.2d 800, 802 (Fla.1984)). For this reason, counsel did not err by failing to file a motion to suppress based on the protective sweep. Accordingly, the claim raised is without merit.

Petitioner does not explain how the state court erred in its finding that *no* evidence was obtained during the protective sweep and prior to execution of the warrant.  Since no evidence was obtained during the sweep, there was no evidence for counsel to attempt to suppress.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## V.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 11, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 7th day of February 2019.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.